Our second case for this morning is Bijan v. USCIS, United States Citizenship and Immigration Good morning. May it please the Court, my name is Christina Abraham and I represent the appellant Laith Bijan in the matter before the Court. The appellant petitioned for naturalization and he was denied by the agency, the United States Citizenship and Immigration Services. He was denied essentially on two grounds. First, for providing false information in order to obtain an immigration benefit. And second, for not having a valid immigrant visa at the time he entered the United States. The main contention by the government is that the appellant was married at the time he entered the United States and he entered on an immigrant visa based on his status as the unmarried son of a lawful permanent resident. But you know, even if we were to agree with you that the state of his marriage was contested, you know, facts one way or facts the other way, there are other misrepresentations in this record, starting with the fact that his original application for a visa flat out says he has no children. And he had two children. And it's not the kind of thing people mix up usually. You have, at least if it's only two. And you know, he also is changing his names all the time. You know, the baptismal certificates that he submits are not regular. I guess I look at this case and I think there's just too much falsehood here. At least too much for me to think that there's an abuse of discretion on the part of USCIS in acting as they did. Well, let me clarify this. First, Your Honor, when he applied for the immigrant, when he submitted the immigrant visa application, he did so through an agency. That's a matter of the record. There's an agency, an office that he went to. He did not write or speak English at the time. And the application was entirely in the English language. And his passport indicated that his status was single. And so what he believes happened was that the agency put that he had no children because it assumes a single man is not going to have children. His testimony... But we have no record of that. I mean, I guess, doesn't that feel too speculative? Well, he's testified to these events, Your Honor. It's in the record. He said that he went to this office. They gave him the paper. He signed it. But nobody reviewed it with him. Does the application itself reflect the fact that you're saying that it was prepared by an agency as opposed to him? Correct. And was that in the record? Correct, Your Honor. Was that in the record before the district court? Yes, Your Honor. It is. Didn't he swear to the accuracy of the application? He signed to it. And then he testified that when he went and he affirmed the accuracy of the application, that what he understood was being asked of him was to affirm that he had about his military service in Iraq, to affirm a question about his military service in Iraq. And so he was questioned about that. But he says he never understood that he was asked to affirm the entire contents of the application. What troubles me about this particular fact is it's not a small one in the context of this fact pattern where the basis upon which he was going to be admitted, among other things, was that he was unmarried. So it seems to me that he had an incentive not to list his children because had he listed his children, it may have raised a question about whether he was married. And then, you know, it may have been difficult for him at that point in time. So can you address that? It seems far from something immaterial or an oversight. Well, the easiest way I can answer that, Your Honor, is that it may have been. And that's why a hearing should have been conducted, is to determine what his intent was, what actually occurred. I think that a trier could have believed his version of events. And so long as that's the case, it should have at least heard his situation before deciding that he had, you know, lied on his immigrant visa application. But, you know, the administrative implications of your position are troubling to me because the United States has a presence in basically every country in the world with minor, minor exceptions. And these papers are things that need to be relied on. And if we have to have a hearing every time somebody says, oh, I didn't really understand it, I'm not a native English speaker, maybe I don't speak English at all, that's true of countless people who come in. And I'm very bothered at the argument that all this paperwork is really just worth nothing. Well, I don't argue that it is worth nothing, Your Honor. I think that the history of the case law shows that hearings are conducted on this to determine intent, that that is the process that's afforded to petitioners in this case. And I would go back to the genuine issues in this particular case as well. The government's source for the proffered wedding date has changed on at least two occasions. And I'm saying I don't disagree with you that if the only question before us were was he married, was he not married, I think the government has maybe evidence that could be believed, but maybe not reliable evidence about whether it was 1996 or 1990 or 2006 or, you know, which city and all the rest of it. It's a messy record. I agree with you. But that's not the only problem in this record. That's where we are. Well, there was something else that you had raised, Your Honor, and that was his using of different names. He actually hasn't used different names. The marriage certificate, the 1990 certificate that was proffered by the government uses a different name. I'm sorry, the 1996 marriage registry uses a different name. He actually hasn't. I mean, he has used essentially one name since he's entered the United States. Well, his mother's petition seems to refer to him as the family name Murad, first name Leith, middle name William. I don't see Bijan anywhere in that. I don't know how the naming conventions work in Iraq. Well, the series, the Leith, William, and Murad are a series of first names. Bijan is his family name. And she doesn't put it down. It doesn't appear in this. But she's not responsible for his or he's not responsible for what she puts down. He puts it down. He's Bijan Leith W. Or Leith W. Murad Bijan. I can see that. So you think aside from the government's evidence, it's all consistent? I'm sorry? I didn't hear the comment, Your Honor. You're telling me that the only times we see other names are in this evidence that you're contesting from the government. Certainly not from the petitioner himself. If it was somewhere else, it may have been. But it was not from the petitioner himself. He's only used one name. Ms. Abraham, can I ask you what may seem like a really pesky factual question? The district court was troubled on the unfit morality by the no question, the no answer to the question, have you ever given any false testimony in connection with trying to secure an immigration benefit? Are we absolutely sure that question was asked? It seems from the record it was. And what do you base that upon? Because when I look at the transcript, Exhibit 9 to the government's motion for summary judgment, I actually don't see that question in the transcript. But what I do see is that Mr. Bijan stipulated that it was asked. Why did he do that? What's that based upon? I couldn't answer that question because I wasn't representing him at the time. What I did see from the record was it does seem that the question was asked of him, if he had ever given false information, and he did answer no. And he contends that he has not given false information. But you don't see that in the transcript, do you? I don't. I think that it's in. The immigration officer says, yes, I asked that question and got an answer. But I don't see it in the transcript. I don't. I can't answer the question right now, Your Honor. I think that if you'd like, I could write a post-argument memorandum on it. I mean, he did seem to stipulate to it, which I'm not sure why would you stipulate to that. I think, and I wasn't representing him at the time, but I have to say that it is a question that's asked on the N-400 application, and it is a question, from my experience, that is consistently asked at the interview. So I don't think that there's much room to contest it, and I don't see that he had a record of doing so. So I would say also that the English barrier, the language barrier, was a factor in his consistency. His English looks terrible. I agree with that. Yes. Are there any questions? I have one minute remaining, and I would. Why don't you save your one minute, and we will hear from the government. Thank you very much. Mr. Sheffield? Good morning, Your Honor. May it please the Court. Fred Sheffield on behalf of the United States Citizenship and Immigration Services. Defendants, obviously, are asking that this Court affirm the District Court's decision with respect to summary judgment because there is, in fact, no material issue of fact as to whether Petitioner met the requirements for naturalization. But the primary point on which the government seems to rely is on the fact that, is the question whether, at the time he comes in, he was really married. And I find the evidence quite conflicting on that point. You've got this 1990 thing, and then the guy says, oh, you know, I didn't really mean 1990. I made a mistake. It's 1996. The names aren't the same. You know, all these pages in the local language don't help me too much, but there's evidence that it's not until 2006, and also evidence that he was kind of keeping his relationship under wraps because maybe that's, you know, an out-of-wedlock relationship is frowned on in many countries. I don't know which way it goes, but it looks like not the gist for summary judgment. It looks to me like it's a real problem, and I don't see the government making any argument about the statement that there were no children in the 2003 application. So I'm wondering if there's a waiver there. Well, the district court definitely, we certainly have made the argument that there's a false testimony problem here. But did you rely on the no on children? I don't, I didn't see that. Well, I think, I mean, what our argument was that he certainly should have given the correct answer to that question, have you ever given false testimony or have you ever given false or misleading information to the government. The answer to that question should have been yes, and the reason for that is because of really what amounts to a shifting and a series of really impossible to reconcile statements about why he omitted any reference to his children. But don't you rely on the argument, the marriage issue and the false baptismal certificates? Isn't that the basis of your argument for lying on that? There's the false baptism, and there's also the fact that when he was pressed to explain why he omitted his, I mean, when you go back to 2006, he admits that he submitted visa petitions on behalf of his children. And in a letter to USCIS, he stated that the reason that he omitted them from his application was not because someone else filled out the application, which is what we're hearing today and which is the factual proffer that he's offering now. Instead, what he said to USCIS back in 2006 was that at the time that he was filling out that 2003 visa application, he had no contact with his children. But what I think counsel is saying is that the 2003 visa application that was submitted on his behalf, that was filled out by an agency, not that the 2006 with the baptism certificates was filled out by an agency. Right. So what happened was that after he entered the United States, he then petitioned for his children to come in. And when USCIS noticed that he was petitioning for children to come in, they also noticed the fact that earlier on he had not indicated that he had any children. So USCIS followed up with him and said, so which is it? Do you have, are these children yours or aren't they? And his response to that question was that, well, the reason I left them off my application was that because the war was happening and I didn't have any contact with my children. That statement is just impossible to square with the statement that he made to USCIS in his November 30th sworn statement in support of naturalization. He was asked, where did your wife and children live when you left Iraq in 2013? And he said, I took them with me. So his statements, and this is in the deposition, this is in the sworn statements, he repeatedly clarifies that what happened was he was living in Iraq in 2003 up until the moment that the family decided to leave. I think Chief Judge Wood's question though is, isn't it cleaner to folk, especially given his language skills are really deficient? That's the problem I have with the baptismal certificate argument. I think I read that transcript and I think he's really confused as to what's being asked. But I think Chief Judge Wood's question is, isn't it cleaner just to rely upon the absence of his children on his own visa application? I think that's an equally valid basis. I mean, his claim now is that, well, it wasn't actually me who filled out that application. So, you know, as Your Honor noted, he did nevertheless attest to the accuracy of it when he was asked to do so at the consulate. And what I'm trying to nail down, it's really a Chenery issue. You know, I'm trying to figure out what was the ground that USCIS, ground or grounds, that the USCIS gave in the district court as this has been going through. I see the part in the district court's opinion over on page 9 where the district court observes that the answer in the October 2003 application to the children was false and the district court does mention what you just alluded to, that a few years later when he's asked, why didn't you mention the children, instead of saying an agency filled out this application and I didn't realize that they were omitted, he says I'd lost contact with them. But if those were not problems that USCIS was giving to the district judge as a basis for the decision, then you're asking us to mend the hold, basically. You're asking us to fill in something that the government just didn't rely on before. Well, Judge, I think it's important to recall that this isn't like a case involving a petition for review where the district court is really reviewing the USCIS decision. The district court makes its own de novo findings and so what this court is reviewing is the district court's ruling on summary judgment in which it made a de novo finding, regardless of what USCIS decided, that the petitioner did not establish his qualifications for naturalization. So you don't think the government's theory has any pertinence in a situation where the district judge has a de novo responsibility? That's surprising. It can certainly inform the district court's view. So we don't need to defer to USCIS either? In this case, the question is... I'm not sure how far down this path you want to go. In this case, what we're primarily focusing on is, I mean, the USCIS decision didn't, I don't think, even reach the false testimony issue. So the district court... No, it didn't. That's the problem, yeah. Well, I think there's a pretty long line of cases that stand for the notion that once someone files a naturalization petition under 1421C, it's the task then of the district court to make a de novo determination. And so that's, today, what this court is reviewing is the district court's de novo findings with respect to naturalization. In my remaining two minutes, I just want to touch briefly on the marriage certificate issue or the marriage registry issue. Before you do that, under the law, you have to show that the false statements were made with the subjective intent to obtain immigration benefits. What's the evidence of the petitioner's subjective intent? Well, the district court addressed this as well, and I think it's... I don't think there's any question that when the petitioner was being asked this question, have you ever given false or misleading information? You know, this was at the end of an administrative appeal process. This was on his... This was at the November 30, 2012 interview after his application had already been denied. And when his N-400 had been denied, USCIS told him point blank, we think it's a problem that you omitted any reference of your children. So this isn't like an instance when he was caught unawares and had no indication this question was coming. So you're saying the timing of it is what shows subjective intent? Right. The timing, the sequence in which he was put on notice by USCIS that this was a problem, and then as the district court, I think, phrased it, he chose to double down. These misrepresentations and false information, this may not have been a problem. These fell outside of the five-year period. But on November 30, he was given an opportunity to either come clean, really, and explain the situation, as he's trying to explain it now, or, as the district court said, double down on these previous misrepresentations. And as the district court said, you know, he chose to double down, and that's really the problem in terms of establishing his good moral character now, is the fact that it's pretty clear that he gave what amounts to false testimony, false oral statements under oath during that November 30, 2012, sworn statement. I've got five seconds left, and so subject to the court's questions, I will rest on our briefs. Thank you very much. I think you have about a minute, Mr. Abraham. Thank you. First, I'd like to direct the court's attention to a case, United States v. Profaci. And in that case, the court dealt with an Italian immigrant who had misrepresented his criminal convictions in Italy upon entering. The court in that case left it to the lower court to determine his subjective intent when he was answering those questions on the immigrant visa application. And I would say that a hearing should have been held in this case. He chose to double down was the language used by the district court judge. And I think that that's a statement that really can only be made when you've done a credibility determination. How can you say somebody doubled down or lied? How do you determine what way to give any kind of evidence or testimony before actually hearing from them? This is exactly why summary judgment is reserved for cases where there are no genuine issues of material fact and that hearings are required in these cases. Thank you. All right, thank you very much. Counsel will take the case under advisement.